UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SALEM SHIFT LLC, aka SHIFT DRINK SALEM, and KAYLA PAIGE BESSE, an individual,<br><br>Plaintiffs,<br><br>-against-<br><br>BUFFALO PEDAL TOURS, LLC, KEN SZAL, and BAVISTA LLC,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES CAUSED BY BREACH OF CONTRACT, NEGLIGENCE, AND UNFAIR AND DECEPTIVE BUSINESS PRACTICES UNDER TITLE 15, MASS. GEN. LAWS, CHAPTER 93A, SECTIONS 2 and 11**<br><br>**A JURY TRIAL IS DEMANDED AS TO ALL ISSUES SO TRIABLE** |

## Introduction

1.      This case involves broken promises and deceptive conduct perpetrated by an out-of-state business against a start-up Salem, Massachusetts business. The deceptive conduct ruined the young business and cost the business and its owners substantial sums of money. This complaint seeks damages for the losses thus sustained to be doubled or trebled as this Court deems just, and reasonable attorney's fees as allowed by law.

## The Parties

2.      Plaintiff Salem Shift LLC ("Salem Shift"), also known by the trade name "Shift Drink Salem", is a limited liability company organized under the laws of the Commonwealth of Massachusetts. All of its members are domiciled in the Commonwealth of Massachusetts and its only place of business is in the Commonwealth of Massachusetts.

3.     Plaintiff Kayla Paige Besse ("Besse") is the managing member of Salem Shift and is domiciled in the city of Salem, Massachusetts.

4.     Defendant Buffalo Pedal Tours ("Buffalo Pedal") is a New York limited liability company organized under the laws of the State of New York. Its members are domiciled in the state of New York and Buffalo Pedal has its headquarters in the City of Buffalo, New York.

5.     Defendant Ken Szal ("Szal") is the managing member of Buffalo Pedal and is domiciled in the state of New York, in or around the City of Buffalo.

6.     Defendant Bavista LLC ("Bavista") is a New York limited liability company organized under the laws of the State of New York. Its only members are domiciled in the State of New York and Bavista has its headquarters in the City of Buffalo, New York. At all times relevant herein Bavista was operating with and in concert with and as an agent of and for Defendants Buffalo Pedal and Szal and is liable on that basis for their actions and for the harm they have caused Plaintiffs.

## Jurisdiction and Venue

7.     Subject matter jurisdiction over this action is conferred upon this Court by 28 U.S.C. §1332(a)(2) (diversity of citizenship) because the Plaintiffs (domiciled in Massachusetts) are citizens of a different state than are Defendants (domiciled in New York), and the amount in controversy exceeds $75,000.00 exclusive of interests and costs, as is more particularly shown below.

8.     Venue is proper in this District under 28 U.S.C. §1391(a)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within

the County of Essex and the City of Salem, Massachusetts, within this District.

## Facts Related to All Counts

9. Besse completed her education, having received a Master's degree in History from Salem State College.

10. Commencing in late 2020, Besse determined to form and conduct her own business. She believed that there remained a growing market for tourist activities in and around Salem, Massachusetts, a city long known for being a national and even an international tourist destination during the summer and fall months of the year. Among other attractions, Salem has for many years been known as "Witch City" because of its well-known history concerning the public trials of alleged "witches" in the late 1662s, and the public's ongoing fascination with that history.

11. Besse further learned about the growing popularity of group pedal bikes that were being used for group tours in cities around the country. A group of a dozen or more people could ride a specially designed and built "group bicycle" by which they would, through their own pedal power, tour a city or local tourist attractions.

12. After research and investigation, in October 2020, Besse and her mother made contact via telephone and email with a manufacturer of group pedal bikes in Bend, Oregon. The purpose of this contact was to learn more about these bikes, their cost, how they operated, how they might be used in a tourist-popular city like Salem, Massachusetts, and the timing of delivery. She determined from this visit that such a pedal bike was a fun way for a group to socialize while seeing and learning about the sites of a city and was therefore a promising attraction for tourists and a promising

business venture. She decided to invest in the purchase of such a pedal bike in order to commence operating a bike tour business in and around Salem, Massachusetts.

13. Unfortunately, the Bend, Oregon pedal bike manufacturer's product was in such demand that the manufacturer could not promise her delivery of a bike in the near future.

14. After searching for other manufacturers, and after having conversations with Defendant Szal on behalf of Buffalo Pedal about purchasing a bike from Buffalo Pedal, she settled on a plan to purchase a pedal bike from Buffalo Pedal and Szal. Knowing that she had a supplier for a pedal bike, she started the hard work of securing the necessary approvals from local authorities to operate such a business.

15. In November 2020, Besse commenced discussions with the officials of the City of Salem and the Commonwealth of Massachusetts about the requirements she needed to satisfy in order to operate such a pedal bike within the city of Salem. She consulted with the Salem Police Traffic Control, Massachusetts Department of Transportation, and applied for a pedicab license with the City of Salem. After learning about the pedal tour plan of Besse, the Mayor of Salem supported the plan.

16. Because group pedal bike riding was often accompanied by drinking alcohol in moderation, she also consulted with the Massachusetts Alcoholic Beverages Control Commission ("ABCC") to determine if alcoholic beverages could be allowed on such bike rides and, if so, the requirements and limitations involved.

17. Besse also applied to the Secretary of State to form a limited liability company in Massachusetts under the name "Salem Shift LLC", the name under which

she planned to operate the pedal bike tours if all required licenses and authorizations were obtained. On April 22, 2021, the Commonwealth of Massachusetts Secretary of State's Office approved her LLC application and Salem Shift became duly authorized to operate as a business in Massachusetts.

18. Because she was encouraged that her hard work in obtaining all necessary approvals would pay off and she was likely to get those approvals, she and her mother traveled to Buffalo, New York on April 22, 2021, to meet personally with Defendant Szal, see his pedal bike product and learn more from him about how it operated and its reliability.

19. After Besse explained to him the plan she had for pedal tours, Szal represented to Besse the high quality of the 15-person pedal bike he and his company manufactured, how it was well suited for the bike tours she was planning for her business, and about how well the Buffalo Pedal bike operated and its reliability. All of his representations to her warranted that if she were to purchase the pedal bike he and Buffalo Pedal manufactured, she would have a workable and reliable product on which to build her pedal bike business.

20. On May 18, 2021, by reason of the representations Szal had given Besse, she paid Bavista a deposit of $10,000.00, towards a total purchase price of $57,900.00 in exchange for which Szal, on behalf of himself, Buffalo Pedal, and Bavista warranted that he would manufacturer for her and her newly-formed company, Salem Shift, a pedal bike that was reliable and suited for its intended purpose which, as Szal well knew, as having been so informed by Besse, was to provide a group bike pedal vehicle for tours for up to

15 passengers.

22. On May 20, 2021, after planning and preparing to do so, Besse made a formal presentation to the Ordinance, Licenses and Legal Affairs Committee of the Salem City Council, which thereafter referred the matter of approval to the full City Council for consideration.

22. On June 22, 2021, Besse paid Szal, Buffalo Pedal, and Bavista the balance owed for the pedal bike purchase, which was $47,900.

23. On June 23, 2021, the City of Salem granted permission for Salem Shift to commence group pedal bike operations on a trial basis to see how well it performed in the Salem area.

24. On June 24, 2021, the pedal bike manufactured by Defendants was delivered to Besse and Salem Shift in Salem, Massachusetts. Szal communicated to Besse that he would send an instruction video so that Besse could more easily learn how to operate the pedal bike. However, he never did so.

25. On June 29, 2021, Besse formally commenced business operations though Salem Shift, hiring employees and otherwise preparing her bike touring business to commence operations. This included some promotional activity which resulted in a favorable new article printed, on July 15, 2021, on the front page of the *THE SALEM NEWS*, a widely circulated local newspaper, making the following glowing comments about Besse's new business:

> Bring your own beer and get some exercise at the same time as you zip around the Witch City on a 15-passenger pedal-powered pub on wheels? What's not to love.

> The entire business operates around the idea of a "pedicab," a pedal-powered vehicle for hire. In this case, the pedicab is a 15-passenger pub with a backup, all-electric motor that can take over at any time. The pedicab seats 12 pedal-powering passengers and three more on the back, with pedalers facing each other in two groups of six seated along the length of the vehicle.
>
> Pedal pubs, as they're often known, "were invented in Europe in the late 1990s and have just spread throughout the country. I think they're in 33 states across the United States," said Paige Besse, a Salem resident and owner of the business. "We're not a tour. We're not a bar crawl, as most of them operate. This is sightseeing — once the wheels are in motion, they stay in motion."
>
> The business is named and designed after the concept of a "shift drink," a standard in the restaurant industry where employees coming off grueling shifts wind down with a free drink to end the night.

26.     The news article also gave more details and closed by providing the Salem Shift website.

27.     The pedal bike business Besse worked so hard to develop, and through her hard work resulted in official approval, was very likely to become a success, as the enthusiasm expressed in the above-quoted local news article demonstrates.

28.     On July 17, 2021, bookings for pedal tours commenced on the Salem Shift website, by now advertised and known as "Shift Drink Salem." The booking response was highly favorable.

29.     Reasonable estimates of yearly profits, based on reasonable booking predictions which were in turn based on early enthusiasm and bookings, was that in its first year (not a full year given that she commenced operations mid-summer rather than in the spring), the business would, after expenses, net $150,000 with the promise that it

would expand and be more profitable in the coming years.

30. Amid all this enthusiasm, Besse scheduled a test drive with friends and family as passengers. This was for two purposes. First, Besse wanted to make sure that she knew how to operate the pedal bike safely, an effort made even more necessary because Szal had failed to send an instructional video, despite his promise to do so. Second, riding the pedal bike around downtown Salem would offer yet another opportunity for favorable publicity and, indeed, press was on hand to record and report on this new attraction to the Salem area.

31. Unfortunately, this initial test drive was a failure. The pedal bike was pushed from a storage area out on to a local street, the passengers took their seat and began to pedal, the pedals froze and the pedal bike did not move. Nothing worked. It was even difficult to push back off the street because of the resistance of the pedal bike to any movement even when the pedal bike was headed downhill. The pedal bike was defective. The launch of this promising business was a failure that played out in public.

32. Szal was immediately contacted, the problem was described to him and he promised to have a technician immediately contact Besse to determine the problem. That promise also was false as he never sent such a technician. When later asked about the technician, Szal instead told Besse that she should not let any technician look at or try to fix the pedal bike because if she did, he and the other Defendants would refuse to make any refund.

33. Further, and without even knowing whether the problem was the back-up electric motor, Szal stated that a motor replacement would not be available for 90 days,

which would come at the end of the Salem tourist season as well as the trial period allowed Plaintiffs by the City of Salem and thus prevented the launch of this business. All the public knew and would know for the entire season was that the pedal bike did not work and had failed.

## COUNT ONE

### (Breach of Contract)

34. Plaintiffs reallege and incorporate by reference herein the allegations continued in Paragraphs 1 to 33 hereof.

35. The promises and representations made by Defendants were contractual obligations for which Plaintiffs paid for and upon which they relied. The contract consideration for this contract paid by Plaintiffs to Defendants was, among other matters, the $57,900 pad by Plaintiffs to Defendants for the Pedal Bike involved.

36. These contractual obligations were breached by Defendants in the manner stated above.

37. While Defendants returned that purchase price once it became obvious that the Pedal Bike was defective and indeed completely dysfunctional, Plaintiff suffered other damage far exceeding the purchase price.

38. Plaintiffs have been damaged by Defendants' breach of contract in at least the amount of $150,000 for the loss of profits they would have made on the business had the Pedal Bike worked as promised.

39. Plaintiffs expect that at trial they will show that the damages they

sustained were much greater in that Plaintiffs lost their business as a result of the breach by Defendants.

40.	Plaintiff are entitled to compensatory damages as a result of Defendants' breach in an amount to be proved at trial and at least in the amount of $150,000.

## COUNT TWO

**(Unfair and Deceptive Practices in Violation of Title 15, M.G.L., Ch. 93A)**

41.	Plaintiffs reallege and incorporate by reference herein the allegations contained in paragraphs 1 to 40 hereof.

42.	Plaintiffs were at all times relevant herein carrying on a trade or business in this Commonwealth by their pedal bike business described above, within the meaning of Title 15, Massachusetts General Laws, Chapter 93A, section 11.

43.	The deceptive acts and omissions complained above of occurred primarily and substantially within the Commonwealth of Massachusetts and included the false representations about the Defendants' pedal bike described above, and the delivery of that defective pedal bike to Salem, Massachusetts, the false promise of an operators manual when none was delivered and the deception that Defendants well knew the pedal bike they sold to Plaintiffs did not operate properly and was not fit for its intended purposes.

44.	Knowing the use to which Plaintiffs intended to put Defendants' pedal bike, Defendants nevertheless sold and delivered to Plaintiffs a defective pedal bike and did so knowing that the pedal bike would not operate correctly. Indeed, Plaintiffs are informed

that Defendant Szal, on his own behalf and on behalf of Buffalo Pedal and Bavista, knew of the defective nature of the pedal bike before it was delivered to Plaintiffs and further, knew that other pedal bikes Defendants had previously sent to other businesses had failed to operate correctly, and were required to be sent back to the Defendants. He disclosed none of this to Plaintiffs.

45. Moreover, despite his promises to do so, Defendant Szal, acting on behalf of all defendants, did not send to Plaintiffs the operational video for the pedal bike and did not have a knowledgeable mechanic contact Plaintiffs after the pedal bike's defects became known the very first time Plaintiffs attempted to use the pedal bike. Defendant Szal also threatened not to return the amount Plaintiffs paid for Defendants' defective pedal bike if Plaintiffs engaged in any self-help in an attempt to rescue their business by allowing any other mechanic to look at it. Defendants, through Defendant Szal, also instructed the drivers who were sent to retrieve the defective pedal bike not to speak to Plaintiffs when they arrived in Salem, in an effort to conceal what those drivers knew about the defective nature of Plaintiffs' and others' pedal bikes manufactured by Buffalo Pedal. Specifically, drivers who had delivered the pedal bike to Plaintiffs had indicated to Defendants Szal that the pedal bike was not working properly as they loaded it onto the delivery truck to take it to Plaintiffs in Salem.

46. All of the above constitute unfair and deceptive acts or practices under Title 15, M.G.L., Chapter 93A, section 2, and Defendants' conduct entitles Plaintiffs to the award of double or treble the damages actually proven at trial, and the award of reasonable attorney's fees.

## COUNT THREE

### (Negligence)

47.  Plaintiffs reallege and incorporate by reference herein the allegations contained in paragraphs 1 to 46 hereof.

48.  In making the promises set forth above, Defendants, and each of them, assumed a duty to act with reasonable care in their dealings with Plaintiffs.

49.  In acting towards Plaintiffs in the manner described in this complaint, Defendants, and each of them, breached their duties to act reasonably towards Plaintiffs and their unreasonable conduct was the proximate cause of the commercial damages alleged above to Plaintiffs, acted below the standard of care, and acted unreasonably and negligently, thereby causing damage to Plaintiffs as set forth herein.

50.  Further, it was foreseeable that the conduct of Defendants towards Plaintiffs, namely, the unreasonable manner by which they manufactured and delivered a defective and unworkable pedal bike to Plaintiffs when they knew Plaintiffs were relying upon it for a commercial enterprise, would cause the commercial injury that it caused.

51.  Plaintiffs have been damaged by this conduct in an amount to be proved at trial but in an amount of at least $150,000.

## PRAYER FOR RELIEF

By reason of the foregoing, Plaintiffs demand relief as follows:

I.  Compensatory damages in an amount to be proved at trial;

II.  Double or treble damages under Title 15, M.G.L., Chapter 93A, section 2;

III.  Reasonable attorney's fees and taxable costs; and

IV.    For such other and further relief as the Court deems just.

## JURY DEMAND

Pursuant to Rule 38(b), F.R.C. P., plaintiffs demand a jury trial on all issues so triable.

Dated: August 30, 2021                          Respectfully submitted,

                                                          MARKHAM READ ZERNER LLC

                                                          /s/ *John J.E. Markham, II*
John J.E. Markham, II
(Mass. BBO No. 638579)
One Commercial Wharf West
Boston, Massachusetts 02110
Tel: (617) 523-6329
Fax: (617) 742-8604
jmarkham@markhamreadzerner.com
*Counsel for Plaintiffs*